Kirkpatrick C. J.
This cause was carried down for trial, to the Hunterdon circuit, in October term 1814, and a relicta there entered by the defendant, subject to the opinion of this court.upon the following case. (See state of case.)
The principal question which has been raised on this case, and the only one which I think it necessary to consider, is, whether Elizabeth the daughter of John Bray, the testator, took an estate in tail in the lands devised, or an estate for life only.
This question has been so ably argued at the bar, and all the decisions, which can any way bear upon it, from Shelly’s case down to the present day, have been so carefully examined and ^applied, that it would be useless for me to go over the same ground. It would be, at best, but a consumption of time without the hope of throwing additional light upon the subject in controversy.
It will be sufficient to say, that no principle in our law is more clearly settled than this, that a devise to one/or life, or for life only, or for life and no longer, and then the heirs of his body, carries an estate in tail to the devisee.
Nor do I well see how it has come to pass, that lawyers have so much puzzled themselves about the reason of this rule. Both parts of such a devise cannot take effect upon a literal construction. If the first devisee take an estate for life only, his heir as such can take nothing, because he had no heritable estate. It became necessary, therefore, so to construe such devise, as that both parts of it should stand. Either the devise for life must be taken in the popular and common acceptation of such terms, and must be intended to mean that the devisee should have power over the estate during his life only, and not the power of selling and disposing of it in fee; or the term heirs must be taken in a sense different from its appropriate meaning, and limited signification, in the law. And, as the great interest in such devises is the inheritance and not the estate of the immediate devisee; it is easy to see which of these rules of construction would *345 be most likely, on a general scale, to carry into effect the intention of the testator. We have no necessity therefore to go back to fcedal times, and to trace the chivalrous notions of our ancestors, buried in the ruins oí a thousand years, as has been said, to find at least one sufficient reason for this rule; a reason too, which ought to operate equally at all times, and with us as powerfully as it did with them.
Be this, however, as it may, it seems to be agreed on all hands, even by the counsel for the plaintiff themselves (one only excepted), that this rule which has been so long settled, is not now to be disregarded nor broken down, but that the devise in question must be taken subject to it in its true application.
Like all others, this rule has its exceptions; exceptions founded upon the intention of the testator. But then this intention must not be mere guess work, it must be plainly expressed or necessarily implied, as our books tell us.
In the first place then, the devise in the will being expressed to *befor life, is,not according to the rule of construction, to be taken as indicative of the testator’s intention against the estate tail, because the rule itself is founded upon that very case; and if this should be taken as conclusive, there would be an end of the rule: the very pith of it is, that the words for life, are to be taken in the common and popular acceptation of them.
In the second place. The difficulties, or in common phrase, the injustice, which may seem to arise from this rule, by the law of descent, carrying the estate far down in the right line, and leaving younger children, or those nearer of kin, to the ancestor, unprovided for, cannot be regarded in looking for the intention of the testator. This would militate equally against the rules of inheritance in every shape.
In the third place. We are least of all, to call up the shade of the deceased, as has been done here, and to interrogate him as to what would have been his wishes if he could have looked into future times, and to put into his mouth, such responses as we ourselves would give when viewing the present state of his family. This would be making a new will devised by ourselves upon after *346 circumstances, for every man that comes into a court of justice.
The true doctrine is, that the intention of the testator, in order to control the general rule, must be plainly expressed, or necessarily implied, in the will itself.
Now, in this will it is not pretended there is any such intention expressed. If there were, there would be an end of the question, or rather the question never would have been raised. But it is said there is such an intention necessarily implied; and this opinion is founded upon the last clause of the will contained in the state of the case in' which it is said that the word heirs, as applied to the issue of the testator’s daughter Susannah, must, from the scope of the will, mean children, (a)
There is perhaps some confusion of terms in this respect, and in this place : but if it is lawful- for us to go out of the case, and to look into the whole will as has been done at the bar, I think this confusion will either be fully explained or totally disappear.
The testator being displeased with the husband of his daughter Susannah, devises in these words: “ Item, it is my will, and I do order my executors to sell the land that I had intended to *give to my daughter Susannah and her heirs.” He then gives the money, arising from this sale of the lands, to the children of Susannah, in different portions; calling them children, and mentioning each by name. Then he proceeds and says, “ But if any of her sons should die, not leaving a lawful begotten issue, what was to be his to be divided among the living sons, and so with the said daughters likewise, if any of them should die leaving no such issue as aforesaid, what was to be hers, to be equally divided among the living daughtersand then comes the clause in the case, “ That if all the heirs of either or both of my daughters, (meaning Elizabeth and Susannah) should die and leave no issue, as afore *347 said, then what should or was to be theirs, to be equally divided among my three sons, John, Samuel, and Thomas, and to their heirs forever.”
Now, upon a careful examination of this part of the will, it appears to me that the testator mistook the law, and supposed that money arising out of lands could be entailed like the lands themselves, yet I do not perceive that he has made any great confusion of words or misapplication of terms. When he intends to give real estate to the heirs of Elizabeth, he calls them the heirs of her body; when he intends to give money-legacies to the children of Susannah, he calls them children, and names them particularly ; when he means to create an estate tail in this money-interest, and speaks of these children in conjunction with their issue lawfully begotten, as a line of inheritance upon the failure of which the money was to go over to his sons ; in order to avoid circumlocution» he calls them the heirs of Susannah. This phraseology, if not technically accurate in itself, is abundantly explained by what goes before. Carry back the term heirs in this clause, to the devises to which they necessarily relate, and no doubt can remain as to the sense in which it is used, no doubt can remain as to the testator’s intention ; no devise is defeated, no confusion introduced, no uncertainty created.
Shall it be said then, that the mere application of this term, in a single instance, in a sense not technically correct, shall change its meaning in every other place, and thus destroy every inheritance created by the will? I cannot bring myself to such a conclusion.
In a,ll devises of land, from the very nature of the subject, the inheritance is the great thing to be regarded. It is never to be ^defeated by light and fanciful constructions or by confusion of terms, if all the other provisions in the will can be carried into effect, in consistency with it.
Upon the whole then, I am of opinion that Elizabeth, the daughter of the testator, took an estate in tail general in the premises in question with remainder in fee to the testator’s sons John, Samuel, and Thomas, as tenants in common.
*348 According to the terms of the case submitted, there-let judgment be entered for the defendant as in case 0f a nonsuit.

.) See Scudder vs. Vanarsdale, 2 Beas. 109. Ross vs. Adams, 4 Dutch. 161, 1 Vr. 505. Kearney vs. Macomb, 1 C. E. Gr. 189. Kennedy vs. Kennedy, 5 Dutch. 187. Demarest vs. Hopper, 2 Zab. 611. Den. M’Ginnis, vs. M’Peake, Pen. *297. Quick vs. Quick, 6 C. E. Gr. 13. See also Heater vs. Van Auken, 1 McC. 159. Brokaw vs. Peterson, 2 McC. 194. Feit vs. Vanatta, 6 C. E. Gr. 84. Akers vs. Akers, 8 C. E. Gr. 26. And State vs. Engle, 1 Zab. 347. Cross vs. Cross, 2 C. E. Gr. 291.